**BIODIVERSITY LEGAL FOUNDATION et al., Plaintiffs,**

v.

**Gale NORTON, Secretary, United States Department of the Interior, et al., Defendants.**

**No. Civ.A.00–3030(RMU).**

United States District Court, District of Columbia.

May 30, 2001.

Eric Robert Glitzenstein, Daniel Ryan Vice, Meyer & Glitzenstein, Washington, DC, for Plaintiffs.

Matthew Love, S. Jay Govindan, U.S. Department of Justice Environmental Division, Washington, DC, for Defendants.

***MEMORANDUM OPINION** Granting the Plaintiffs' Motion to Compel Production of the Administrative Record*

URBINA, District Judge.

**I. INTRODUCTION**

The Cape Sable seaside sparrow is one of the most imperiled songbirds in the United States. First listed as an endan-

gered species in 1967, the sparrow lives in southern Florida's "marl prairie," a habitat within the Everglades National Park and the Big Cypress National Preserve. In the last two decades, flood control projects in South Florida have disrupted the natural hydrology of the Everglades, all but decimating the western Florida population of the sparrow. These hydrology changes continue to represent the main threat to the overall survival of the species.

The plaintiffs in this action are two non-profit organizations dedicated to biodiversity and conservation in Florida, and three private citizens of Florida. They have sued the U.S. Department of Interior and the Fish and Wildlife Service for allegedly failing to satisfy certain duties under the Endangered Species Act. Specifically, the plaintiffs contend that by failing to issue a "12–month determination" on revision of the sparrow's "critical habitat designation," the defendants have violated the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and 706(1).

This matter comes before the court on the plaintiffs' motion to compel production of the administrative record. In support of their motion, the plaintiffs argue that the court must have the full administrative record before it to resolve the plaintiffs' claims. The defendants oppose the plaintiffs' motion on the ground that there is no administrative record in this case, and that they "cannot produce that which does not exist." They also claim that their failure to issue a "12–month determination" does not constitute "agency action or inaction" for the purposes of the APA because they have not made an "affirmative decision" not to act. For the reasons stated herein, the court rejects the defendants' claims and grants the plaintiffs' motion to compel production of the administrative record.

## II. BACKGROUND

### A. The Endangered Species Act

An "endangered species" is one that is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). Under the ESA, the federal government must take affirmative steps toward conservation and recovery of an endangered species. These steps include designating the species' "critical habitat," *id.* at § 1553(a)(3), and ensuring that federal actions are not likely to jeopardize any listed species or harm its critical habitat, *id.* at § 1536. The ESA defines "critical habitat" as "(i) the specific areas within the geographical area occupied by the species ... on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and (ii) specific areas outside the geographical area occupied by the species at the time it is listed ..., upon a determination by the Secretary that such areas are essential for the conservation of the species." *Id.* § 1532(5)(A).

The U.S. Fish and Wildlife Service ("the Service" or "FWS") designated the sparrow's critical habitat in 1977, "before the full distribution of the subspecies was known." *See* Compl. ¶ 22. In 1983, the Service acknowledged that damage to the sparrow's critical habitat had forced the sparrow to abandon certain areas and occupy new ones, thereby necessitating review of the sparrow's critical habitat. *See id.* One of the areas not included in the 1977 designation, but which the Service concluded had become part of the sparrow's "essential habitat," was the area occupied by the western population of the sparrow. *See id.*

In 1999, having yet to revise the critical habitat, the Service reported that the spar-

row remained "at significant risk of imminent extinction." *See* Compl. ¶¶ 16, 23. Indeed, in April 1999, the Service issued a Multi–Species Recovery Plan ("MSRP"), in which it stated that

The critical habitat, as designated, does not adequately account for the distribution of the present-day core subpopulations, or the areas necessary for continued survival and recovery. An important area west of Shark River Slough, which until 1993 supported one of two core subpopulations (nearly half the entire population), is not included within the designation, and has been undergoing detrimental changes in habitat structure as a result of water management practices.

*Id.* ¶ 25 (citing MSRP at 4–348). The Service, in its MSRP, also underscored the need to redefine the sparrow's critical habitat, stating that the critical habitat required "significant review and redesignation." *Id.*

## B. The Plaintiffs' Petition to the Service for Critical–Habitat Revision

Under section 553(e) of the ESA, any "interested person" may petition the Service for revision of a critical habitat designation. *See* 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14. Once a petition is submitted to the Service, "to the maximum extent practicable, within 90 days after receiving the petition ..., the Secretary shall make a finding as to whether the petition presents substantial scientific information indicating that the revision may be warranted." 16 U.S.C. § 1553(a)(3)(D)(i). If the Service determines in its "90–day finding" that revision "may be warranted," the Service must determine within 12 months "how [it] intends to proceed with the requested revision." *Id.* at § 1553(a)(3)(D)(ii). The "12–month determination" must be made "[w]ithin 12 months after receiving a petition," regard-

less of when the Service issued its 90–day finding. *Id.; see also Biodiversity Legal Found. v. Babbitt,* 63 F.Supp.2d 31, 34 (D.D.C.1999) (ESA "12 month period runs from the receipt of the petition, not from the preliminary [90–day] finding").

On August 25, 1999, the plaintiffs petitioned the Service for revision of the critical-habitat designation of the Cape Sable seaside sparrow. *See* Compl. ¶ 27. The Service then waited almost eleven months to issue its "90–day finding." *See* Compl. ¶ 33. The Service concluded in its finding that "protection and management of the western subpopulation habitat area is essential to ensuring the continued existence of the sparrow," and sought public comments on what action it should take with respect to the petition. *See id.* ¶¶ 33, 34 (citing 65 Fed.Reg. 42, 316).

Despite the admitted urgency of its 90–day finding, however, the Service decided that it would not process the plaintiffs' petition in accordance with the deadlines set forth in the ESA, but instead would give the petition the lowest possible priority "in accordance with the current Priority Listing Guidance." *See* Compl. ¶ 35 (citing 65 Fed.Reg. 42, 317). The Service's Priority Listing Guidance assigns "relative priorities to listing actions under Section 4 [of the ESA]." *See* 64 Fed.Reg. 57, 114. The Guidance places "[t]he processing of administrative petition findings" as the lowest possible priority, below, among other things, all "final determinations on proposed additions to the lists of endangered and threatened wildlife and plants" and processing of "new proposals to add species to the lists [of endangered and threatened species]." *Id.* at 57, 114–115. Therefore, as the plaintiffs explain, revisions to critical habitat designations will always have a lower priority than other section 4 actions. *See* Compl. ¶ 15.

Under the timeframe set forth in the ESA, the Service's 12–month determination was due on August 26, 2000. *See* Defs.' Response at 2. To date, the Service has not issued this 12–month determination and has not stated "how [it] intends to proceed with the requested revision." *See id.* ¶ 37 (citing 16 U.S.C. § 1533(a)(3)(D)(ii)). On September 27, 2000, the plaintiffs sent the Service a formal notice of intent to sue for the Service's failure to timely issue its "12–month determination" and for its allegedly unlawful reliance on its Listing Priority Guidance as a justification for its delay. *See* Compl. ¶ 38. In response to the plaintiff's notice, the Service acknowledged the ESA's 12–month requirement, but stated that it was not going to comply with the ESA in this situation because it was "suspend[ing] work on all finding and associated documents" as a result if its "funding situation in fiscal year 2001." *See id.* ¶ 39. The Service further informed the plaintiffs that it did not "anticipate additional funds becoming available until fiscal year 2002 or later." *Id.*[1]

In their suit before this court, the plaintiffs contend that the defendants have violated section 4 of the ESA, which requires that the "12–month determination" be completed within 12 months of the Service's receipt of the petition. The plaintiffs also contend that the defendants' failure to issue a 12–month determination constitutes unreasonable delay in violation of the APA, 5 U.S.C. §§ 555(b) and 706(1). At this stage, the only issue before the court is whether the defendants should be required to produce the administrative record. For the reasons set forth below, the court will order the defendants to produce the administrative record.

## III. DISCUSSION

### A. Legal Standard

The Administrative Procedure Act (APA) governs judicial review of agency action. *See* 5 U.S.C. § 706(2); *Public Citizen v. Heckler*, 653 F.Supp. 1229, 1236 (D.D.C.1986). The APA authorizes a reviewing court to "compel agency action withheld or unreasonably delayed" and to "hold unlawful and set aside agency action, findings and conclusions of law" that are, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

In addition to authorizing judicial review of agency action, the APA provides that the reviewing court "shall review the whole record or those parts of it cited by a party." *See* 5 U.S.C. § 706. Indeed, courts have recognized that to ensure fair review of an agency action, they "should have before it neither more nor less information than did the agency when it made its decision." *See Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C.Cir.1984). "To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case and so the APA requires review of 'the whole record.'" *Id.* at 792. Significantly, this requirement applies whether a court is reviewing agency action or inaction. *See Cross Timbers Concerned Citizens v. Saginaw*, 991 F.Supp. 563, 570 (N.D.Tex.1997) (citing *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)); *see also Raymond Proffitt Found. v. United States Army Corps of*

---

1. The plaintiffs allege that the Service has allocated sufficient funds to its Southeastern regional office for fiscal year 2001 to complete work on the petition, but that rather than use these funds for work on the critical habitat revision of the sparrow, the Service has decided to hold these funds in reserve for other "unspecified, potential 'emergencies'" that may or may not occur during fiscal year 2001. *See* Compl. ¶ 42.

*Eng'rs*, 128 F.Supp.2d 762, 768 n. 8 (E.D.Pa.2000) ("Review of claims based on failure to act and on action taken" are based on the agency's administrative record).

### B. Analysis

The defendants' grounds for opposing the motion to compel are curious. While conceding that they have not fulfilled their statutory duty to make a 12–month determination, the defendants state that their failure to do so is "an unfortunate consequence of the multitude of responsibilities imposed upon FWS while at the same time being constrained by limited budget appropriations." *See* Defs.' Response to Pls.' Mot. to Compel at 2. The defendants then claim that because their failure to make the determination "is not the result of an affirmative decision by FWS not to take action," there is no final agency action in this case. *See id.* at 2. The defendants conclude—without citing any authority— that "in a case such as this . . ., where no final agency action has yet been taken, there simply is no basis for an administrative record to be compiled." *Id.* at 3–4.

In effect, the defendants are arguing that the challenged (in)action—failure to comply with a statutory duty within the required time period—is not reviewable because the defendants never "affirmatively" decided not to do what was required of them. With this argument, the defendants apparently seek to write out those provisions of the APA that allow a court to compel unreasonably delayed action, which by definition, has not yet occurred. Indeed, the defendants claim, (again, without citing any authority), that "failure to take action by a statutory deadline is substantially different than an affirmative decision not to act." Defs.' Response at 7.

The court has not found any precedent that would lend support to the defendants' arguments. On the contrary, earlier this year, the D.C. Circuit rejected similar arguments advanced by the Department of the Interior in a case involving mismanagement of Native–American trust accounts. *See Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C.Cir.2001). In that case, Interior had argued at the district-court level that there was no final agency action for the court to review because its challenged action was a "work in progress." *See id.* The Court of Appeals responded that although it cannot review non-final agency action, "one exception occurs where plaintiffs claim that a governmental action was unlawfully withheld or unreasonably delayed." *Id.* The Court further noted that "where an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review." *Id.* (citations and internal quotation marks omitted). The Court reasoned that were it otherwise, "agencies could effectively prevent judicial review of their policy determinations by simply refusing to take final action." *Id.*

Finally, although the defendants have argued that no administrative record exists, this is plainly not the case, as evidenced by documents that the plaintiffs have acquired under the Freedom of Information Act. *See* Mot. to Compel Ex. A; Def.'s Response at 1, 5, 8. Thus, because the documents do indeed exist, and because the defendants' failure to issue a 12–month determination does fall within the scope of the APA, the court will grant the plaintiffs' motion to compel production of the administrative record.

An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporane-

ously executed and issued this 30th day of May, 2001.