**FRIENDS OF THE RIVER, a non-profit corporation, Defenders of Wildlife, a non—profit corporation, and Center for Biological Diversity, a non-profit corporation, Plaintiffs,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS, and Major General Meredith W.B. Temple, in his official capacity, Defendants.**

Case No. 2:11–CV–01650 JAM–JFM.

United States District Court, E.D. California.

April 27, 2012.

E. Robert Wright, Friends of the River, Sacramento, CA, Jason C. Rylander, Defenders of Wildlife, Washington, DC, Lisa Tamara Belenky, Center for Biological Diversity, San Francisco, CA, for Plaintiffs.

Devon Lehman McCune, John H. Martin, Govt., United States Department of Justice, Denver, CO, for Defendants.

### *ORDER DENYING DEFENDANTS' MOTON TO DISMISS*

JOHN A. MENDEZ, District Judge.

Before the Court is Defendants' United States Army Corps of Engineers and Major General Meredith W.B. Temple, (collectively "the Corps" or "Defendants"), Motion to Dismiss (Doc. # 26) the First Amended Complaint ("FAC," Doc. # 25) filed by Plaintiffs Friends of the River, Defenders of Wildlife, and the Center for Biological Diversity, (collectively "Plaintiffs"). Plaintiffs oppose the motion (Doc. # 47).[1]

### I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiffs allege that for decades the Corps has allowed, encouraged, and, in some cases, required the planting of trees and vegetation on levees for environmental purposes, including habitat preservation. Plaintiffs allege that the Corps reversed course when it issued the "Final Draft White Paper: Treatment of Vegetation within Local Flood Damage—Reduction Systems" ("White Paper") on April 20, 2007. Plaintiffs contend the White Paper calls for a vegetative—free—zone for all levees.

Plaintiffs allege that Defendants changed the regulatory and environmental status quo when they adopted Engineer

---

1. This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 22, 2012.

Technical Letter 1110–2–571 ("ETL"), allegedly replacing EM 1110–2–301, on April 10, 2009 and again ten months later when they produced the draft Environmental Assessment/Finding of No Significant Impact on February 9, 2010 for the "Policy Guidance Letter—Variance from Vegetation Standards for Levees in Floodwalls" ("PGL"). Plaintiffs allege that through a Federal Register Notice ("Federal Register Notice") the PGL acknowledged that the ETL Guidelines establish "mandatory vegetation-management standards for levees." 75 Fed.Reg. at 6364.

The ETL establishes "Guidelines for Landscape Planting and Vegetation Management at Levees, Floodwalls, Embankment Dams, and Appurtenant Structures." Plaintiffs aver that the ETL prohibits all vegetation except grass, requires a vegetation-free zone 15 feet to each side of a levee, and requires removal of all noncompliant vegetation. The ETL, according to Plaintiffs, requires levee operators to seek a variance to retain non—compliant vegetation for environmental purposes. Plaintiffs further allege that the Corps itself described the ETL standards as "mandatory" in the Federal Register and the Corps is currently implementing the ETL in California in the course of levee inspections.

Plaintiffs allege that the PGL substantively changed the Corps' policy on existing variances and has had direct, indirect, and cumulative impacts on the environment including impacts to listed species and critical habitats.

Plaintiffs allege that on about April 2, 2010, the Sacramento Area Flood Control Agency ("SAFCA") and the Central Valley Flood Protection Board formally applied to the Corps for a variance from the standard vegetation guidelines set forth in the ETL as nonfederal sponsors of the American River Watershed Canyon Features Project. Plaintiffs aver that on about June 16, 2010, the Corps approved in part and denied in part the variance request. Plaintiffs further allege that on about December 30, 2010, in rejecting a request from the California Department of Water Resources ("DWR") to cease implementing the ETL, the Corps declared "should there be information available that warrants a revision or an improvement to the standards in the ETL, we will change the standard. However, until that time, the Corps will continue to implement the current standards in the ETL." FAC ¶ 39.

Plaintiffs allege that the Defendants' actions were final agency actions, major federal actions, and rulemaking that require compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., the Endangered Species Act ("ESA"), 16 U.S.C. 1531 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 701–706. Plaintiffs contend that the Corps failed to comply with those statutes. Plaintiffs allege that the Corps did not prepare an Environmental Impact Statement or an Environmental Assessment under NEPA before issuing the White Paper, ETL, Federal Registrar notice, or PGL. Likewise, Plaintiffs allege that the Corps did not consult with the fish and wildlife agencies under the ESA. Finally, Plaintiffs allege that the Corps did not provide notice and comment in violation of the APA.

Plaintiffs filed their Complaint (Doc. # 1) on June 20, 2011. On July 27, 2011, Plaintiffs filed a Motion for Summary Judgment (Doc. # 11). The Court granted the Corps' motion to stay briefing on the summary judgment motion until the Court decides the Corps' Motion to Dismiss (Doc. # 23). On September 19, 2011, the Corps filed its Answer to Plaintiffs' Complaint (Doc. # 24). On October 10, 2011, Plaintiffs filed the FAC (Doc. # 25) alleging three causes of action: (1) NEPA viola-

tions; (2) ESA violations; and (3) APA Violations. On October 21, 2011, Defendants filed the instant Motion to Dismiss (Doc. # 26) which included two exhibits and several attachments. Plaintiffs oppose the Motion (Doc. # 47) and object to the exhibits in the Motion (Doc. # 48).

## II. STATUTORY BACKGROUND

### A. *Administrative Procedure Act*

The Administrative Procedure Act ("APA") provides that a "person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof." 5 U.S.C. § 702. The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. In reviewing agency action, the court may set aside the action only if it is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or (D) without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D).

### B. *National Environmental Policy Act*

■ The National Environmental Policy Act ("NEPA") has "twin aims. First, it places upon [a federal] agency the obligation to consider every significant aspect of the environmental impact of a proposed action. Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.,* 462 U.S. 87, 97, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983) (citation and internal quotation marks omitted). NEPA does not contain substantive environmental standards. Rather, it "establishes 'action-forcing' procedures that require agencies to take a 'hard look' at environmental consequences." *Metcalf v. Daley,* 214 F.3d 1135, 1141 (9th Cir.2000).

NEPA requires federal agencies to prepare an Environmental Impact Statement ("EIS") prior to taking "major Federal actions significantly affecting the quality" of the environment. 42 U.S.C. § 4332(2)(C). Some proposed federal actions categorically require the preparation of an EIS. If the proposed action does not categorically require the preparation of an EIS, the agency must prepare an Environmental Assessment ("EA") to determine whether the action will have a significant effect on the environment. *See* 40 C.F.R. § 1501.4 (Council on Environmental Quality ("CEQ") regulations implementing NEPA); *Metcalf,* 214 F.3d at 1142. If the EA reveals that the proposed action will significantly affect the environment, then the agency must prepare an EIS. If the EA reveals no significant effect, the agency may issue a Finding of No Significant Impact ("FONSI"). *See* 40 C.F.R. § 1501.4; *see also Metcalf,* 214 F.3d at 1142.

### C. *Endangered Species Act*

The Endangered Species Act ("ESA") established a program for conserving certain species listed by the Secretaries of the Interior and Commerce as endangered or threatened species ("listed species"). 16 U.S.C. §§ 1531(b), 1532(6), (20), 1533. Where an agency determines that its action "may affect listed species or designated critical habitat[,] 50 C.F.R. § 402.14(a), it must pursue some form of consultation ("informal" or "formal"), with the U.S. Fish and Wildlife Service ("USFWS") or the National Marine Fisheries Service." 50 C.F.R. §§ 402.13, 402.14. If the agency determines that a particular action will have "no effect" on a listed species or

critical habitat, there is no consultation requirement. 50 C.F.R. § 402.12; *Sw. Ctr. For Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1447 (9th Cir. 1996).

## III. OPINION

### A. *Legal Standard*

#### 1. *Motion to Dismiss*

Dismissal is appropriate under Rule 12(b)(1) when the District Court lacks subject matter jurisdiction over the claim. Fed.R.Civ.P. 12(b)(1).

■ When a defendant brings a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff has the burden of establishing subject matter jurisdiction. *See Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1102, n. 1 (9th Cir.2007) ("Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.").

■ There are two permissible jurisdictional attacks under Rule 12(b)(1): a facial attack, where the court's inquiry is limited to the allegations in the complaint; or a factual attack, which permits the court to look beyond the complaint at affidavits or other evidence. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir.2003). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction, whereas in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Li v. Chertoff*, 482 F.Supp.2d 1172, 1175 (S.D.Cal.2007) (internal citations omitted).

■ If the moving party asserts a facial challenge, the court must assume that the factual allegations asserted in the complaint are true and construe those allegations in the light most favorable to the plaintiff. *Id.* at 1175 (citing *Warren v. Fox*

*Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.2003)). If the moving party asserts a factual attack, a court may resolve the factual disputes by "look[ing] beyond the complaint to matters of public record, without having to convert the motion into one for summary judgment." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000). The court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

■ However, "jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and the substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the 'merits' of an action." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004) (internal citations and quotations omitted). The question of jurisdiction and the merits of an action are intertwined where "a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Id.* (internal citations and quotations omitted).

### B. *Evidentiary Objections*

Defendants premise their Motion to Dismiss on a factual challenge, arguing that this Court lacks subject matter jurisdiction because the White Paper, ETL, and PGL, whether taken separately or together, do not constitute reviewable final agency action and are not substantive rules. Because Defendants base their Motion to Dismiss on a factual challenge, they attach two exhibits and several attachments for the Court to consider.

Plaintiffs object to all the exhibits. *See* Doc. # 48. Plaintiffs provide three main arguments why the Court should strike these exhibits: (1) the Court should not consider materials outside the complaint on a motion to dismiss, so the documents

are not relevant to the instant motion; (2) the documents are not admissible under Federal Rule of Evidence 402 because the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, require review of administrative decisions based on the whole record and Defendants' exhibits constitute part, but not all, of the administrative record; (3) the Rabbon declaration is irrelevant to the instant motion because it is not based on personal knowledge and the opinions offered are without foundation as to any relevant expertise, in violation of Federal Rule of Evidence 702.

Defendants respond that the Court should consider its exhibits and attachments. *See* Doc. # 50. First, Defendants argue that the exhibits are relevant because the Corps challenges some of the Plaintiffs' factual allegations, and as such, the Court can properly consider the documents attached to the Motion to Dismiss. Additionally, Defendants argue that the factual allegations are not so intertwined with the merits that the Court cannot resolve the jurisdictional issues separately. Secondly, Defendants argue that the administrative record is not necessary to consider the instant motion and that some of the documents attached to the Motion to Dismiss post-date the alleged agency actions at issue, and therefore, would likely not be part of the administrative record. Defendants point out that Plaintiffs initially moved for summary judgment on the basis of many of these same documents, arguing that no administrative record was necessary for the Court to decide the issues and asked the Court to take judicial notice of many of these documents. *See* Pls.' Notice of Mot. for Summ. J. (Doc. # 11) (asking the Court to take judicial notice of the White Paper and ETL among other documents); Statement of Undisputed Facts in Supp. of Mot. for Summ. J. & Req. for Judicial Notice (Doc. # 11–2); Pls. Opp'n. to Defs. Mot. to Stay (Doc. # 21). Finally, Defendants contend that

the Court can properly consider the Rabbon Declaration because the declaration is based on his personal and official knowledge and information and that he provides background information and facts surrounding the Framework process. In the alternative, Defendants submit that the Court can decide the Motion to Dismiss without considering the disputed documents; it could decide that Plaintiffs lack standing or that Plaintiffs' claims are an impermissible programmatic challenge without considering any documents outside Plaintiffs' FAC. The Court could also decide that the ETL and PGL are not final agency actions and that the Corps was not required to comply with the APA's formal rulemaking procedures by considering only the ETL and draft variance policy.

■ Because Defendants assert a factual challenge to the Court's subject matter jurisdiction, as discussed *supra*, the Court may "look[ ] beyond the Complaint to matters of public record ... [and it] need not presume the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242. Thus, the Court may properly consider documents outside the complaint.

Here, the Court finds that Defendants' motion and exhibits are arguments on merits issues, such as the presence or absence of final agency action, whether rulemaking has occurred, and whether the ETL was a new substantive rule or merely a reiteration and clarification. The issues "are so intertwined[,] that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of [the] action." *Safe Air*, 373 F.3d at 1040. Much of the evidence upon which these merits issues could be decided is solely within the possession of Defendants. Defendants concede that the documents currently before the Court do not constitute the complete administrative record. To resolve these questions, the Court must

consider the entire administrative record. The Court cannot merely look to the face of the documents to determine whether they are final agency actions or whether they prescribe substantive rules. "[T]o ensure fair review of an agency action, [the Court] should have before it neither more nor less information than did the agency when it made its decision." *Biodiversity Legal Found. v. Norton,* 180 F.Supp.2d 7, 10 (D.D.C.2001) (internal quotation omitted). Additionally, Defendants concede that the Court could decide the Motion to Dismiss without considering some or all of the documents attached.

■ While the Court will not consider all of the documents attached to the Motion to Dismiss because they form an incomplete administrative record, the Court takes judicial notice of the ETL and the White Paper as background materials. The Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2). The Court must take judicial notice for a judicially noticeable fact "if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(c)(2). Additionally, both parties requested judicial notice of these documents. While it is appropriate for the Court to take judicial notice of public records in this type of motion, the Court is limiting its notice of these documents to background materials and it will not rely on these documents to resolve any factual dispute. *See U.S. v. 14.02 Acres or Land More or Less in Fresno Cnty.,* 547 F.3d 943, 955 (9th Cir. 2008) (holding that district court judge did not abuse its discretion in taking judicial notice of a government study for the limited purpose of background material without relying on it to resolve any factual dispute). The Court elects to take judicial notice of these documents because they are heavily relied upon by both parties

and there is no dispute as to the accuracy of the documents. The parties disagree as to whether the documents reflect final agency actions or substantive rules.

■ As a final matter, the Court will not consider the Rabbon Declaration. Mr. Rabbon's declaration is not based on personal knowledge and the opinions offered are without foundation as to any relevant expertise. *See* Fed.R.Evid. 702.

### C. *Claims for Relief*

#### 1. *Final Agency Action*

Defendants argue that Plaintiffs' NEPA and APA claims should be dismissed because the Corps has not taken a final agency action subject to review and that the ESA claim should be dismissed for not identifying a discrete violation of the ESA.

■ Claims under the APA require the presence of a final agency action. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 882–83, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

> As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Fairbanks N. Star Borough v. U.S. Army Corps of Engineers,* 543 F.3d 586, 591 (9th Cir.2008) (quoting *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)).

Defendants argue that the ETL is not a final agency action because instead of marking the end of the agency's decision-making process or determining legal rights and obligations, the ETL provides guidelines to be considered in future decision-making and contemplates further, site-spe-

cific action. Defendants further argue that the White Paper and PGL are not agency actions. Defendants explain that the Corps developed the White Paper to serve as a discussion paper outlining the treatment of vegetation within local flood—damage—reduction systems and to recommend further steps. In the final section of the White Paper, Section 7 (titled "Recommendations"), the document lists recommended actions, which Defendants contend are only recommendations, not final agency actions. Defendants further argue that the White Paper is marked "Final Draft," and was never finalized as an official Corps document or agency position. Likewise, Defendants contend that the PGL is not final agency action because it is explicitly a draft document, is subject to change, and even once it is finalized, the PGL would not be final agency action because it merely outlines the variance process as opposed to dictating an outcome in any particular case. Finally, Defendants argue that taken together, the three documents do not constitute final agency action.

Plaintiffs counter that Defendants' actions are final agency actions and major federal actions that require compliance with NEPA and the ESA. Plaintiffs argue that even if the ETL did not require immediate changes on the ground, they aver in the FAC that real consequences and impacts flow from these actions by changing the status quo for existing variances and requiring a significant change in vegetation management on existing levees. With respect to the PGL, Plaintiffs argue that they allege in the FAC that the PGL has the force of law and that it established an interim rule. Plaintiffs further argue that the Corps' actions constitute major federal action subject to NEPA and that the ETL should have been subjected to NEPA compliance. Similarly, Plaintiffs argue that the Corps' actions were agency actions subject to the ESA and that ESA

consultation was required prior to the ETL, interim rule, and PGL's implementation.

Defendants analogize this case to *United States v. Alameda Gateway Ltd.*, 213 F.3d 1161 (9th Cir.2000). In *Alameda Gateway*, the Ninth Circuit found that a Corps Engineer Regulation did not have the force and effect of law because its text indicated that it merely "memorializes the general policy." *Id.* at 1168. The Ninth Circuit further found that the Engineer Regulation did not have the force and effect of law because it "was not published in either the Code of Federal Regulations [ ("C.F.R.") ] or the Federal Register, providing further evidence that the regulation was not intended to be binding." *Id.* Defendants argue that the ETL's language is similar to the Engineer Regulation, indicating that the ETL is a general policy statement, not a substantive rule. The ETL, titled "Guidelines," states that it provides guidelines to "be used with reasonable judgment" and is tailored to the specifics of an individual project. Moreover, Defendants argue that the ETL was not published in either the C.F.R. or the Federal Register.

Plaintiffs distinguish *Alameda Gateway* from the instant case by arguing that *Alameda Gateway* was brought by the Corps to recover costs associated with the removal of a pier by defendants; it was decided on summary judgment, not a motion to dismiss; it did not involved the APA, NEPA, or the ESA; and Plaintiffs are not challenging the vegetation standards themselves, rather Plaintiffs allege that the Corp. adopted substantive changes in the rules for levee management affecting the environment and listed species and habitats without undertaking the required environmental review under NEPA and consultation under the ESA.

The Court finds Plaintiffs' arguments persuasive—in *Alameda Gateway*, the Ninth Circuit sua esponte raised the issue that it "will not review allegations of noncompliance with an agency statement that is not binding on the agency." *Id.* at 1167. The court found that the regulation was not binding because the Engineering Regulation was more of a policy statement and it was not published. However, the Ninth Circuit made this determination at the summary judgment stage, presumably with the aid of the administrative record to guide its decision. Additionally, the instant case is a procedural challenge and not a substantive challenge, further distinguishing *Alameda Gateway*.

Like *Alameda Gateway*, most environmental cases considering subject matter jurisdiction are decided only after reviewing the administrative record, generally at the summary judgment stage. *See e.g. River Runners for Wilderness v. Martin*, 593 F.3d 1064 (9th Cir.2010) (finding on a motion for summary judgment that the defendant's policies do not proscribe substantive rules, and were not promulgated in conformance with the procedures of the APA); *Or. Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977 (9th Cir.2006) (finding on a motion to dismiss, but after reviewing the full administrative record, that the defendant's policies were final within the meaning of the APA); *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630 (9th Cir.2004) (finding final agency action and NEPA violations on a motion for summary judgment); *Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660 (9th Cir.1998) (finding on a motion for summary judgment that no environmental impact statement was necessary).

Defendants rely on three cases, *Fairbanks N. Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586 (9th Cir.2008), *Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095 (9th Cir.2007), and *Inst. for Wildlife Prot. v. Norton*, 205 Fed.Appx. 483, 485 (9th Cir.2006), in support of their argument that courts routinely dismiss claims for lack of jurisdiction where there is not final agency action within the meaning of the APA. These cases are distinguishable from the instant case. In *Fairbanks*, a judgment on the pleadings action, the Ninth Circuit determined that there was no final agency action under the APA for purposes of judicial review. 543 F.3d at 591. In a judgment on the pleadings case, unlike here, the court takes "all the allegations in the pleadings as true." *Id.* Here, Defendants contradict Plaintiffs' pleadings and ask the Court to consider outside evidence of a final agency action. *Rattlesnake Coalition* is distinguishable because the primary issue in the case was whether there was sufficient federal control over the contested policy. The Ninth Circuit did not address whether there was final agency action. *See* 509 F.3d at 1105 (holding that only the federal government can be a proper defendant in an action to compel compliance with NEPA). Finally, in *Institute for Wildlife Protection*, a terse Ninth Circuit opinion, the Court held that the plaintiffs failed to challenge a final agency action. 205 Fed.Appx. at 485. Aside from holding that the plaintiffs asserted a programmatic challenge, not within the district court's jurisdiction, the Ninth Circuit provides no other reasoning for its decision.

■ Determining whether the ETL, PGL, and White Paper are final agency actions in the instant case requires a review of the full administrative record because, as discussed *supra*, "the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of [the] action." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 (9th Cir.2004). Therefore, because the Court requires the entire administrative record, it cannot, at

this juncture, determine whether there has been final agency action.[2]

## 2. *Programmatic Challenges*

Defendants argue that Plaintiffs' NEPA and APA claims should be dismissed because they are broad programmatic challenges. Defendants argue that Plaintiffs do not challenge discrete or final agency action, but the Corps' vegetation removal policy. Defendants contend that Plaintiffs do not challenge any site—specific action. Defendants continue that the three specific examples Plaintiffs mention in their FAC do not prevent their claims from being impermissible programmatic challenges because the Plaintiffs do not make any specific allegations that the cited actions were final, that the Corps violated NEPA, the APA, or the ESA with regard to those instances, or that Plaintiffs were themselves harmed by those actions. Defendants argue that Plaintiffs' requested relief is not tailored to any specific project but seeks to enjoin nationwide standards and statewide activity. Defendants further argue that the ESA does not authorize open-ended challenges and Plaintiffs' ESA claim does not fall within the limited scope of the citizen management standard. Defendants continue that the specific documents Plain-

tiffs challenge do not have the force of law and do not have any force or effect unless and until the Corps acts separately to apply them.

Plaintiffs counter that that they have challenged identifiable, final agency actions within the meaning of the APA. Plaintiffs argue that they seek vindication of procedural rights conferred by NEPA, the ESA, and the APA, and the substantive protections of the ESA. Plaintiffs also argue that the nature of the challenged actions cannot be determined in a 12(b)(1) motion.

The Supreme Court has made clear that the APA does not allow "programmatic" challenges, but instead requires that Plaintiffs contest a specific final agency action which has "an actual or immediate threatened effect." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 882–94, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In *Lujan,* the plaintiffs alleged that the defendants violated the Federal Land Policy Act, NEPA, and APA in the administration of the "land withdrawal review program" of the Bureau of Land Management, but failed to challenge any particular agency action that caused harm. *Id.* at 875, 891, 110 S.Ct. 3177. The Court held that the "land withdrawal review program" was not

---

**2.** The Court reviewed Plaintiffs' Notice of Supplemental Authority (Doc. # 53) in which Plaintiffs supplied the Court with the recently issued *per curium* United States Supreme Court decision in the case of *Sackett v. E.P.A.,* —— U.S. ——, 132 S.Ct. 1367, 182 L.Ed.2d 367 (2012). In *Sackett,* the Supreme Court held that property owners and other regulated parties may challenge administrative compliance orders issued by the Environmental Protection Agency ("EPA") under the Clean Water Act. The Court found that the compliance order "has all the hallmarks of APA finality." 132 S.Ct. at 1368. The compliance order determined rights or obligations because the plaintiffs had the legal obligation to " 'restore' their property according to an agency-approved Restoration Work Plan," they had to "give the EPA access to their property and to

records and documentation related to the conditions at the Site," and "the order expose[d] the Sacketts to double penalties in a future enforcement proceeding." *Id.* at 1371–72. The government argued that judicial review of the compliance order was unavailable unless and until the EPA filed a civil enforcement suit against them. *Id.* at 1372–73. Unlike the present case, the government did not argue that the compliance order was a draft or was not a final decision. Here, the dispute concerns whether the ETL, PGL, and White Paper are final agency actions or draft recommendations. Once the Court considers the entire administrative record, it can turn to *Sackett,* among other authority, to determine whether the disputed documents constitute final agency action.

an identifiable, much less final, agency action or series of such actions within the meaning of the APA. *Id.* at 890, 110 S.Ct. 3177.

Unlike the challenge in *Lujan* to the "land withdrawal review program," Plaintiffs challenge identifiable, final agency actions within the meaning of the APA. Plaintiffs seek vindication of procedural rights conferred by NEPA, ESA, and APA, and the substantive protections of the ESA. While the parties dispute whether or not Defendants have issued final agency actions, if through discovery, Plaintiffs can prove that the PGL, ESL, and White Paper are final agency actions, then Plaintiffs' claims are proper.

Furthermore, Defendants' argument that agency programs, as opposed to specific decisions, are not subject to ESA compliance is not persuasive. "The Ninth Circuit has undeniably interpreted ESA to require consultation on programmatic actions and rules, including consultation at the planning stage, not just at the site—specific stage." *Citizens for Better Forestry v. U.S. Dep't of Agric.,* 481 F.Supp.2d 1059, 1095 (N.D.Cal.2007); *see also Pac. Rivers Council v. Thomas,* 30 F.3d 1050, 1055 (9th Cir.1994) (holding that the Forest Service's LRMPs which established comprehensible management plans governing a multitude of individual projects required ESA consultation because they may affect listed species).

Similarly, NEPA compliance is required even if the challenged actions are part of a broad program. Programmatic EISs have been recognized and utilized in a number of cases before the Ninth Circuit. *See, e.g., N. Alaska Envtl. Ctr. v. Kempthorne,* 457 F.3d 969 (9th Cir.2006) (concluding that programmatic EIS prepared by Forest Service with respect to oil and gas leasing in Alaskan preserves was sufficiently site-specific even though it lacked analysis of the effect on each parcel since there was no way of knowing at time programmatic EIS was prepared what development would materialize); *Friends of Yosemite Valley v. Norton,* 348 F.3d 789 (9th Cir.2003) (discussing the distinction between site-specific and programmatic EISs, and holding that programmatic EIS prepared in conjunction with creation of a land management plan for Yosemite was sufficient at the implementation stage and provided guidelines for future actions); *N. Alaska Envtl. Ctr. v. Lujan,* 961 F.2d 886 (9th Cir.1992) (holding programmatic EIS prepared in conjunction with approval of mining in Alaskan parks was adequate).

The Ninth Circuit's recognition of the propriety of programmatic EISs, and its distinction between the requirements for programmatic EISs and site—specific EISs, suggests that, at least in this circuit, NEPA's requirement of an EIS is not necessarily limited to site or project—specific impacts or activities, as Defendants suggest. In recognizing programmatic EISs, the Ninth Circuit has held that "[a]n EIS for a programmatic plan ... must provide 'sufficient detail to foster informed decision—making,' but that 'site-specific impacts need not be fully evaluated until a critical decision has been made to act on site development.'" *Friends of Yosemite,* 348 F.3d at 800 (quoting *Lujan,* 961 F.2d at 890); *see also California v. Block,* 690 F.2d 753, 761 (9th Cir.1982) (explaining that considerations regarding the adequacy of a programmatic EIS may differ from those for a site-specific EIS). Indeed, Plaintiffs' procedural challenges to the alleged programmatic NEPA decisions are immediately ripe for review because they "will influence subsequent site-specific actions" and "predetermine[ ] the future." *Laub v. U.S. Dep't of the Interior,* 342 F.3d 1080, 1088, 1091 (9th Cir.2003). Accordingly, the Court finds that Plaintiffs'

programmatic challenge is cognizable under these statutes.

### 3. *Rulemaking*

Defendants argue that the Court should dismiss Plaintiffs' third claim which alleges that the Corps violated the APA by failing to complete formal rulemaking before adoption of new rules. Defendants argue that the ETL sets forth "guidelines" to steer future decisionmaking and is not a substantive rule that must comply with the APA's notice and comment procedures. Plaintiffs respond that the ETL, interim rule, and PGL are substantive rules because they are designed to implement and prescribe Corps procedures and requirements for vegetation management on and near levees throughout the United States.

Under the APA, an agency " 'is required to follow prescribed notice—and—comment procedures before promulgating substantive rules.' " *Sacora v. Thomas,* 628 F.3d 1059, 1069 (9th Cir.2010) (quoting *Colwell v. Dep't of Health & Human Servs.,* 558 F.3d 1112, 1124 (9th Cir. 2009)), *cert. denied,* —— U.S ——, 132 S.Ct. 152, 181 L.Ed.2d 68 (2011). Notice and comment requirements are only for substantive rules, not " 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.' " *Id.* (quoting *Mora–Meraz v. Thomas,* 601 F.3d 933, 939 (9th Cir.2010)). "The definition of a substantive rule is broad and includes action that is legislative in nature, is primarily concerned with policy considerations for the future rather than the evaluation of past conduct, and looks not to the evidentiary facts but to policy-making conclusions to be drawn from the facts." *Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affairs,* 464 F.3d 1306, 1317 (Fed.Cir.2006) (internal quotation omitted).

Here, Plaintiffs allege that the Corps adopted a new vegetation management policy that supersedes prior guidance and the Corps published in the Federal Register an interim rule that explicitly revokes all prior variances. Plaintiffs further allege that the ETL does far more than reiterate and clarify the vegetation management standards previously stated in EM 1110–2–301. Defendants reply that the ETL is not binding because there is a chance for a waiver or modification demonstrating that the policies were only intended to provide guidance within the Park Service. This argument, however, is a factual challenge concerning whether the ETL is a substantive rule or a guideline, and the Court cannot resolve this issue without the full administrative record. Thus, the Court is unable to decide this rulemaking issue until it has had the opportunity to review the full administrative record.

### 4. *Ripeness*

Defendants contend that in the alternative to their "no final agency action" argument, this Court lacks jurisdiction because none of Plaintiffs' claims are ripe. Defendants argue that Plaintiffs have not targeted a concrete application of any of the Corps' policies. Defendants contend that they are still considering revisions to their variance policy, and the Corps and California state and local agencies are jointly developing a comprehensive, long term program to upgrade and manage vegetation on Central Valley flood management systems, including levees eligible for the Rehabilitation and Inspection Program ("RIP"). Defendants argue that Plaintiffs cannot show they will suffer "immediate, direct, or significant hardship" if judicial review is delayed because it has not been determined which sponsors of levee systems now enrolled in the RIP might act to remove vegetation in order to comply with the ETL's vegetation standard. Those decisions, according to Defendants, depend

on any number of future decisions by the Corps and the individual levee sponsors. Furthermore, Defendants claim that Plaintiffs have not articulated any hardship from delaying judicial review until it becomes clear whether and how the ETL's vegetation standards will be applied to any particular levee system, especially the levees in the Central Valley, and how that specific application of the vegetation standard causes tangible harm to Plaintiffs. Moreover, judicial intervention at this stage would, in Defendants' view, inappropriately interfere with ongoing administrative action on both national and local bases. Finally, Defendants argue that the effects and application of the ETL and the Corps' policies are speculative on the existing record; Plaintiffs do not challenge the application of the Corps' policies to any particular levee system, but rather they challenge the policies on a programmatic basis and in their potential application.

Plaintiffs respond that Defendants' argument on ripeness ignores the tangible procedural injuries alleged by Plaintiffs due to the Corps' failure to undertake timely NEPA and ESA review. Plaintiffs further argue that environmental plaintiffs need not wait for environmental damage to occur to challenge an agency's NEPA compliance.

■■■■■ The basic rationale of ripeness is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In assessing ripeness, a court considers: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropri-

ately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998).

Defendants primarily rely on *Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) to argue that the case is not ripe. However, as Plaintiffs point out, *Ohio Forestry* is distinguishable from the current case because Plaintiffs allege procedural injuries due to the Corps' alleged failure to undertake timely NEPA and ESA review. The plaintiffs in *Ohio Forestry* alleged a substantive statutory violation; they did not allege a procedural NEPA violation. The Plaintiffs in this case, however, allege that Defendants violated NEPA, ESA, and APA for failure to comply with the procedural requirements. As the Supreme Court explained in *Ohio Forestry,* "NEPA, ... simply guarantees a particular procedure, not a particular result.... [A] person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." *Id.* at 737, 118 S.Ct. 1665. "The rights conferred by NEPA [and the ESA] are procedural rather than substantive, and plaintiffs allege a procedural rather than substantive injury." *Kern v. U.S. Bureau of Land Mgmt.,* 284 F.3d 1062, 1071 (9th Cir.2002). "If there was an injury under NEPA, it occurred when the allegedly inadequate EIS was promulgated. That is, any NEPA violation (and any procedural injury) inherent in the [alleged lack of an EA or EIS] ha[s] already occurred." *Id.* Furthermore, adjudicating the NEPA and ESA claims now will not "inappropriately interfere with further administrative action" because Defendants allegedly have already surpassed the

stage in which they should have issued the EA, EIS, or engaged in their ESA consultation. *Id.*

Furthermore, the Ninth Circuit has repeatedly held that environmental plaintiffs need not wait for environmental damage to occur to challenge an agency's NEPA compliance. *See Cal. ex rel. Lockyer v. U.S. Dept. of Agric.,* 575 F.3d 999, 1011 (9th Cir.2009) (finding matter ripe for adjudication where it would be plaintiffs only opportunity to challenge a rule on a nationwide, programmatic basis); *Kern,* 284 F.3d at 1078 (warning against the "tyranny of small decisions" by holding that "[a]n agency may not avoid an obligation to analyze in an EIS environmental consequences that foreseeably arise from [a program] merely by saying that the consequences are unclear or will be analyzed later when an EA is prepared for a site—specific program"); *Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1516 (9th Cir.1992) ("[I]f the agency action could be challenged at the site—specific development stage, the underlying programmatic authorization would forever escape review. To the extent that the plan pre—determines the future, it represents a concrete injury the plaintiffs must, at some point, have standing to challenge."); *Salmon River Concerned Citizens v. Robertson,* 32 F.3d 1346, 1355 (9th Cir.1994) (finding NEPA challenge to regional EIS on herbicide use ripe for review).

Accordingly, Plaintiffs' claims are ripe for review.

### D. *Standing*

Defendants argue that Plaintiffs lack standing to challenge the ETL, PGL, or the program they allege arises from the two policies because there is no live dispute over a specific concrete application of those particular policies. Defendants argue that Plaintiffs' alleged procedural injuries are not concrete injuries and that Plaintiffs do not aver any concrete and immediate injury because they fail to identify any particular situation where the Corps is applying the challenged policies to compel the removal of all vegetation from any levee system.

Plaintiffs argue that where procedural violations are at issue, they do not need to demonstrate any actual environmental harm to establish standing; an increased risk of harm resulting from Defendants' action or omissions is sufficient. Plaintiffs argue that the Ninth Circuit has repeatedly recognized "increased risk" of injury as supporting standing in NEPA cases and harm cognizable for the purposes of standing in ESA cases is found where there is added risk to species when an agency makes a decision in violation of the ESA's consultation requirements.

■ Where procedural violations are at issue, in order "to show a cognizable injury in fact, [Plaintiffs] must allege that (1) [Defendants] violated certain procedural rules; (2) these rules protect [Plaintiffs'] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *Citizens for Better Forestry v. U.S. Dep't of Agric.,* 341 F.3d 961, 969–70 (9th Cir.2003). Plaintiffs do not have the burden to show that harm will in fact occur or already has occurred from the challenged actions. *See id.* at 972 (explaining that if a plaintiff's standing under NEPA depended on " 'proof' that the challenged federal project will have particular environmental effects, we would in essence be requiring that the plaintiff conduct the same environmental investigation that he seeks in his suit to compel the agency to undertake.").

■ Plaintiffs allege that the Corps has not complied with the procedural requirements of NEPA and the APA rulemaking statutes or the procedural and substantive mandate found in ESA Section

7, and that these statutes protect plaintiffs' concrete interests. Plaintiffs' members also testify to their interests in NEPA and ESA compliance. *See* Second Decl. of Jeffrey Miller ("Second Miller Decl.") (Doc. # 47-3) ¶¶ 10, 11; Decl. of Kelly L. Catlett in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss ("Catlett Decl.") (Doc. # 47-2) ¶ 11. Plaintiffs' members testify that they use and enjoy affected rivers and levees for aesthetic and recreational purposes, fishing, boating, bird watching, rafting, biking, enjoying the scenic beauty the river and trees provide, and observing species and that their interests at stake include the prevention of environmental damage to these areas as well as the preservation of endangered and threatened species that are found there. *See* Second Miller Decl. ¶ 10; Catlett Decl. ¶¶ 3-4. They also testified that the Corps' action has, and may in the future, destroy the values they derive from the rivers, levees, and species that inhabit these areas. *See, e.g.,* Second Miller Decl. ¶ 11; Catlett Decl. ¶¶ 5-10. Therefore, Plaintiffs have shown it is reasonably probable that the challenged actions will threaten Plaintiffs' concrete interests.

Defendants' objection centers on the merits of the claims and whether or not NEPA, ESA, or APA's statutory requirements are applicable to the Corps' challenged action, which, Defendants contend, are part of a program or policy. However, the Ninth Circuit has long recognized standing to challenge NEPA compliance for programmatic decisions. *See, e.g. Pac. Rivers Council v. U.S. Forest Serv.,* 668 F.3d 609, 617-21 (9th Cir.2012) (finding standing to challenge programmatic forest plan); *Sierra Forest Legacy v. Sherman,* 646 F.3d 1161, 1179-80 n. 2 (9th Cir.2011) (finding standing to bring a facial challenge without challenge to site specific implementation and explaining procedural injury under NEPA was ripe for facial challenge); *Salmon River Concerned Citizens v. Robertson,* 32 F.3d 1346, 1355 (9th Cir.1994) (finding standing where a vegetation management plan failed to comply with NEPA).

Furthermore, Plaintiffs have demonstrated concrete interests that meet the geographical nexus requirement for standing. The Ninth Circuit has described the concrete interests test as "requiring a geographic nexus between the individual asserting the claim and the location suffering an environmental impact." *Western Watersheds Project v. Kraayenbrink,* 632 F.3d 472, 485 (9th Cir.2011) (citations omitted). "[E]nvironmental plaintiffs must allege that they will suffer harm by virtue of their geographic proximity to and use of areas that will be affected by the [challenged] policy." *Citizens for Better Forestry,* 341 F.3d at 971 (holding plaintiffs met the geographic nexus requirement where they "properly alleged, and supported with numerous affidavits" their members' use and enjoyment of a "vast range of national forests").

Plaintiffs have alleged that the Corps' actions may affect a very large number of rivers, levees, and species throughout California including the places which Plaintiffs use and enjoy and many of the species in which Plaintiffs have alleged concrete interests. Plaintiffs' members testify to their use of specific areas that have been or may be affected, their interests in vegetation on levees, the health of the riparian areas, and species that depend on riparian areas, and species that depend on riparian areas and many of the river systems with levees which may be affected by the Corps' challenged actions. *See, e.g.,* Catlett Decl. ¶¶ 3, 5-10 and Second Miller Decl. ¶¶ 4-6. While Defendants argue that that Plaintiffs must identify the imminent projects that threaten harm to their concrete interests at the outset of the litigation, as Plaintiffs point out, the full extent of the harm

and injury to Plaintiffs' members is unknown due to the Corps' alleged failure to comply with NEPA or the APA rulemaking procedures, and to formally consult with wildlife agencies on potential impacts to endangered species pursuant to the ESA, prior to adopting the ETL and interim rule. Plaintiffs "need not assert that any specific injury will occur in any specific [levee] that their members will visit. 'The asserted injury is that environmental consequences might be overlooked' as a result of deficiencies in the government's analysis under environmental statutes." *Citizens for Better Forestry*, 341 F.3d at 971–72 (quoting *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1355 (9th Cir.1994)); *see also Res. Ltd., Inc. v. Robertson*, 35 F.3d 1300, 1302–03 (9th Cir. 1993) (holding that plaintiffs had standing to challenge a forest plan even though they could not point to any specific site where the injury is likely to occur).

Defendants' reliance on *P.E.T.A. v. U.S. Dep't of Health & Human Services*, 917 F.2d 15, 17 (9th Cir.1990), where plaintiffs' allegations were found wanting at the summary judgment stage, is distinguishable. In that case, the court found failure to establish standing on a summary judgment motion based on declarations which failed to adequately assert personal injury or harm from grant of funds to research institutions. Here, to survive this motion to dismiss, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plaintiffs provide declarations sufficiently asserting injury and harm stemming from Defendants' actions.

The types of harm and injury Plaintiffs' members testify to are cognizable for purposes of standing. Plaintiffs have standing because the alleged injury "is geographically specific, is caused by the regulations at issue, and is imminent." *Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 708 (9th Cir.2009).

Finally, Plaintiffs have demonstrated causation and redressability. In a procedural challenge, Plaintiffs can assert their right to protect a concrete interest "without meeting all the normal standards for redressability and immediacy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n. 7, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiffs "must show only that they have a procedural right that, if exercised, could protect their concrete interest." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 485 (9th Cir.2011) (citations omitted). Plaintiffs seek an order requiring the Corps to comply with NEPA, the ESA, and APA rulemaking procedures, any of which may relieve some or all of Plaintiffs' injuries. To satisfy the causation and redressability requirement for procedural injury purposes, Plaintiffs need not show that compliance with ESA, APA, and NEPA will ultimately redress their injuries, only that compliance with these requirements may redress the injury. Accordingly, Plaintiffs have sufficiently alleged standing.

## IV. ORDER

For the reasons set forth above,

The Court DENIES Defendants' Motion to Dismiss.

Defendants shall file their Answer to Plaintiffs' First Amended Complaint within twenty (20) days of the date of this Order.

IT IS SO ORDERED.